**UNITED STATES of America**

v.

**MANHATTAN BRUSH CO., Inc., and Norman Bloom, Defendants.**

United States District Court
S. D. New York.
Aug. 13, 1965.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for United States, Richard A. Givens, New York City, of counsel.

William Esbitt, New York City, for defendants.

PALMIERI, District Judge.

The defendants move for an order directing the United States Attorney to furnish the defendants "with all evidence in his possession or under his control which is favorable to the defendants or which would tend to exculpate the defendants". In his affidavit *in support* of the motion defense counsel asks *inter alia* for:

(a) Names and statements of witnesses.

(b) Summaries of witnesses interviews.

(c) Documents.

(d) Tests conducted by the Navy and others of the paint brushes in question.

The motion is made on the authority of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which holds, in essence, that it is a violation of due process for the prosecution to withhold evidence which is material either to the guilt or punishment of an accused. P. 87, 83 S.Ct. 1194.

The defendants are charged in 175 counts with making false claims against the United States by submitting invoices relating to paint brushes which did not conform to specifications in violation of 18 U.S.C. § 287.

The rule of the Brady case is a logical extension of the duty urged upon the Supreme Court by Mr. Justice Frankfurter in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) to supervise the conduct of the lower federal courts in order to establish and maintain "civilized standards of procedure and evidence" (at p. 340, 63 S.Ct. p. 613). Indeed, *long before the McNabb* decision, in 1935, Mr. Justice Sutherland writing for a unanimous Court in Berger v. United States, 295 U.S. 78, 55 S. Ct. 629, 79 L.Ed. 1314 (1935) gave expression to the frequently quoted passage concerning the duties of a prosecutor (at p. 88, 55 S.Ct. at p. 633):

"He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

The nature of this duty was recently discussed and applied by this Court in Application of Kapatos, 208 F.Supp. 883 (S.D.N.Y.1962), quoted with approval in United States ex rel. Meers v. Wilkins, 326 F.2d 135, 139–140 (2d Cir. 1964). There is abundant judicial support for the application of broad principles of fair play—principles which will not offend our traditional sense of justice in attaining an acceptable standard for the conduct of a fair trial. "Due process of law, as a historic and generative principle, precludes defining, and thereby confining, these standards of conduct more precisely than to say that convictions cannot be brought about by methods that offend a 'sense of justice'." Rochin v. People of State of California, 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952). See also The Duty of the Prosecutor to Disclose Exculpatory Evidence, 60 Colum.L. Rev. 858 (1960), and the leading cases on the failure to expose false evidence, Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); and Alcorta v. State of Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957).

The principles of Fair Play in the Conduct of a Criminal Prosecution

Do Not Supply Defendants with a Basis for Pre-Trial Discovery.

This having been said, the defendants' attempt by this motion to exploit the principles of fair play in the pre-trial stages of a criminal prosecution must fail. This is not to say that prosecutions are free to proceed without trammel in advance of trial,[1] but that the measure of fairness cannot appropriately be taken short of trial.

It must be emphasized that the defendants' motion is of the dragnet variety, predicated on the alleged right of the defense to learn all the Government's evidence in advance of trial. The decision in Brady v. State of Maryland, supra, on which defendants principally rely, rested upon the impropriety of a trial where evidence favorable to the accused was suppressed. The entire discussion of the Court related to the resulting deception upon the Court and jury. There was no reference to a defendant's right to obtain pre-trial discovery, notwithstanding the fact that in the Brady case a request addressed to the prosecution had been made prior to trial by counsel for the accused which, had it been complied with, would have revealed the evidence held to have been improperly suppressed. Thus, the circumstances in Brady lent themselves to comment by the Supreme Court on the prosecutor's obligations of disclosure, if any, at the pre-trial stage of a criminal case. But no such comment was made. Even if this Court were to accept the view that this decision is subject to the inference that on due process grounds, a defendant under some circumstances may have the right to discover evidence in the Government's possession, see Discovery in Criminal Cases—In Search of a Standard, 1964 Duke L.J. 477 at 503, 515, as long as such an important change in the criminal law is left conjectural and undefined, there is nothing that can be adopted as a guiding standard. The Brady decision must be understood to refer to the application of tests of fairness to the prosecution at trial, and not at an earlier point in the proceedings.

Pursuant to Rule 16, Fed.R.Crim. P., a defendant can obtain certain evidentiary matter before trial provided he can describe it with adequate specificity. This is also accomplished by means of a subpoena under Rule 17(c), Fed.R.Crim. P. The requirements which must be met under Rule 17 are laid down in United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y.1952). See United States v. Bentvena, 319 F.2d 916, 946 (2d Cir.), cert. denied, Ormento v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). Specificity is an important prerequisite for relief. United States v. Abrams, 29 F.R.D. 178, 182–188 (S.D.N.

---

1. See e.g., Fed.R.Crim.P. 7(f) (Bill of Particulars); 15 (Depositions); 16 (Discovery and Inspection); 41(e) (Motion for Return of Property and to Suppress Evidence); 45(b) (Enlargement); Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1963); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956); Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275. 82 L. Ed. 314 (1937); 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); 8 Wigmore, Evidence § 2184a (McNaughton rev. 1961). These cases and many others support the general rule safeguarding the accused from the use of evidence which can be directly or indirectly traced to a violation of his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States. The "fruit of the poisonous tree" doctrine announced in the second Nardone opinion has been a particularly strong deterrent to any improper pre-trial activity by the prosecutor. It is likely that the disciplines incumbent on a prosecutor at pre-trial will become more stringent with the passage of time. See Discovery in Criminal Cases—In Search of a Standard, 1964 Duke L.J. 477 at 495 (Proposals for Change in the Federal Rules of Criminal Procedure); at 511 (New Responsibilities for the Prosecutor).

Y.1961); United States v. Frank, 23 F. R.D. 145, 147–148 (D.D.C.1959). Rule 17, Fed.R.Crim.P., cannot be deemed to have been nullified sub silentio by Brady v. State of Maryland. To the contrary, the very existence of the Rule and the nature of the Court's discussion as already indicated support the conclusion that no pre-trial remedies were intended to be created.

■ Moreover, in seeking the pre-trial discovery of the statements of witnesses and summaries of witnesses' interviews, the defendants are on equally invalid ground. These can be obtained only after a witness has testified at the trial. In United States v. Giuliano, 2d Cir., 348 F.2d 217, at p. 223, July 9, 1965, the Court of Appeals said:

The plain language of the Jencks Act, 18 U.S.C. § 3500, and consideration of its underlying purpose, compel the conclusion that the discovery procedure therein outlined applies only to statements that must be produced after a witness testifies at the trial. See 1957 U.S. Code Cong. & Admin. News 1869. United States v. Abrams, 29 F.R.D. 178, 183 (S.D. N.Y.1961); United States v. Tane, 29 F.R.D. 131, 133 (E.D.N.Y.1962); United States v. Rosenberg, 157 F. Supp. 654 (E.D.Pa.1958).

The Court approved the trial Court's refusal to permit inspection of a Government agent's notes and certain other records at a hearing on a motion to withdraw a plea of guilty.

■ With respect to the branch of defendants' motion which seeks disclosure of the names of Government witnesses, this, too, must be denied. This information is allowed by statute in capital cases. Title 18 U.S.C. § 3432. No such right is afforded in other cases. *Inclusio unius est exclusio alterius.* Additionally, numerous cases have held that the names of potential Government witnesses need not be disclosed before trial. United States v.

Lebron, 222 F.2d 531, 535–536 (2d Cir.), cert. denied, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955); United States v. Dillard, 101 F.2d 829, 835 (2d Cir. 1938), cert. denied, 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed. 1036 (1939); United States v. Stromberg, 22 F.R.D. 513, 522 (S.D.N.Y. 1957).

■ In sum, while the Government has an important duty to conduct criminal prosecutions fairly, its obligations must be examined and tested after trial, not before. It would be difficult if not impossible to assess the fairness of a prosecution prior to the time the prosecution formally rests its case at trial. Any attempt to do so at an earlier stage of the proceedings would not only be premature but would contravene a well established order of statutory and decisional guides and precedents. The courts have " * * required showing of prejudice, to vary inversely, with the degree to which the conduct of the trial has violated basic concepts of fair play". Application of Kapatos, 208 F.Supp. 883, 888 (S.D.N.Y. 1962) quoting Kyle v. United States, 297 F.2d 507, 514 (2d Cir. 1961). In the quest for fairness in the conduct of criminal trials, we must not lose sight of the many difficult problems affecting criminal cases prior to trial—the danger of the intimidation of witnesses, the elimination or alteration of documentary evidence, the danger of perjury and subornation of perjury—dangers generally considered to be present because the liberty or life of an accused is forfeit. The defendants have real and substantial advantages in the presumption of innocence, in the right to remain silent and in the high burden of proof which the prosecution must meet. The decision of the Supreme Court in Brady v. State of Maryland does not authorize additional advantages to the accused during the pre-trial stages of a prosecution.

The motions are denied.

It is so ordered.[2]

---

2. This decision was made from the bench after argument. The promised opinion has been filed after some delay because of the pressure of other business.